IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CAROTEK, INC.,                              )
                                            )
            Plaintiff,                      )
                                            )        Civil Action. No. 07 11163
      v.                                    )
                                            )
KOBAYASHI VENTURES, LLC,                    )
                                            )
            Defendant.                      )
_____)
                                            )
EVENT CAPTURING SYSTEMS, INC.               )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )
                                            )
                                            )
KOBAYASHI VENTURES, LLC,                    )
                                            )
            Defendant.                      )
_____)

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT ON STANDING, OWNERSHIP,
AND MOST FAVORED LICENSEE ISSUES

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Historical Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Champion Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Carotek License Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.    Jacklin Associates Acquires The Champion License Agreement
        And The Patents From International Paper On October 19, 2007 . . . . . . . . . . . . 5

    E.    Kobayashi Ventures Sends Demand Letters To Carotek on October 29,
        November 9 And November 26, 2007, With The November 26 Letter
        Purporting To Terminate The Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    F.    Kobayashi Purportedly Acquires Title Arising From The Patents On
        December 10, 2007 After Sending The Letters Referenced In Section E . . . . . . . 6

    G.    Kobayashi Files Suit Against Papertech, Inc. In The Eastern District
        Of Virginia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   Legal Standard for Summary Judgment of Lack of Standing . . . . . . . . . . . . . . . . . . 8

III.  Legal Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Kobayashi Ventures Does Not Have Standing To Sue For Alleged
        Patent Infringement Against Carotek Or ECS Occurring Before
        December 10, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Kobayashi Ventures Does Not Have Standing To Sue For Allegedly
        Unpaid Royalty Payments Due Under The License Agreement . . . . . . . . . . . . 10

    C.    Champion Violated The Nmost Favored Licensee clause When
        It Extended More Favorable License Terms To At Least One
        Other Licensee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D.      Kobayashi Did Not Own The Carotek License Agreement Or
        Champion Patents When It Gave Notice Of Termination,
        Meaning That Carotek Is Still Protected By The Terms Of
        The Carotek License Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Cases**

Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1367 (Fed. Cir. 2003)  . . . . . . . 8

Castle Rock Entm't., Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998  . . . . . . 9

Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cleveland v. Policy Management Systems Corporation, 526 U.S. 795, 805-06,
    119 S.Ct. 1597, 1603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 43 (1923) . . . . . . . . . . . . . . 9

Arachnid, Inc. V. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . 9

Minco, Inc. v. Combustion Engineering, Inc., 95 F.3d 1109, 1117-18 (Fed. Cir. 1996)  . . . . . . 10

Nichols v. Nichols, 306 N.Y. 490, 496 (1954)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Laba v. Carey, 29 N.Y.2d 302, 327 (N.Y. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Levine v. Shell Oil Co., 28 N.Y.2d 205 (N.Y. 1971)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Epic Systems Corporation v. Allcare Health Management System, Inc.,
    2002 WL 31051023 (N.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cardinal of Adrian, Inc. v. Amerock Corp., 208 U.S.P.Q. 822, 823
    (E.D. Mich. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Carpenter Technology Corp. v. Armco, Inc., 800 F. Supp. 215, 224 (E.D.Penn. 1992) . . . . . . . 12

St. Joseph Iron Works v. Farmers Mfg. Co., 106 F.2d 294, 299 (4th Cir. 1939) . . . . . . . . . . . . 12

Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.,
    103 F.3d 1571, 1580 (Fed. Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Festinger v. Edrich, 32 A.D. 3d 412, 413 (N.Y.A.D. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Perkins v. Perkins, 226 A.D.2d 610 (N.Y.A.D. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United Mfg. & Service Co. v. Holwin Corp., 187 F.2d 902, 905 (7th Cir. 1951)  . . . . . . . . . . . . 16

**Rules**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CAROTEK, INC.,                                    )
                                                  )
            Plaintiff,                            )
                                                  )        Civil Action. No. 07 11163
      v.                                          )
                                                  )
KOBAYASHI VENTURES, LLC,                          )
                                                  )
            Defendant.                            )
_____)
                                                  )
EVENT CAPTURING SYSTEMS, INC.                     )
                                                  )
            Plaintiff,                            )
                                                  )
      v.                                          )
                                                  )
                                                  )
KOBAYASHI VENTURES, LLC,                          )
                                                  )
            Defendant.                            )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT ON STANDING, OWNERSHIP,**
**AND MOST FAVORED LICENSEE ISSUES.**

COMES NOW, Plaintiffs Carotek, Inc. ("Carotek") and Event Capturing Systems, Inc. ("ECS") and file this Memorandum in support of its Motion for Summary Judgment against Defendant Kobayashi Ventures, Inc. ("Kobayashi"). Carotek presents four separate bases on which the Court should grant summary judgment:

    (1)    Kobayashi does not have standing to sue Carotek or ECS for patent infringment occurring before December 10, 2007;

1

(2)    Kobayashi does not have standing to sue for an alleged breach of a License Agreement to which Carotek is a party because Kobayashi does not have legal title to the Carotek license agreement;

(3)    Carotek is owed past royalty moneys overpaid to its alleged predecessors-in-interest because of violation of the terms of a most favored licensee clause found in the license agreement; and

(4)    Kobayashi did not own the Carotek License Agreement or Champion Patents when it gave notice of termination, and thus Carotek is still protected by the terms of the Carotek license agreement.

## I.    STATEMENT OF FACTS

### A.    Historical Summary

Carotek is a licensee under a license agreement ("Carotek License Agreement") entered into with Champion Paper in 1998 that granted Carotek a non-exclusive license to make, use, and sell certain products allegedly covered under a group of certain patents referred to in this Memorandum as the "Champion Patents." [Ex. 1].  The Carotek License Agreement contained a most favored licensee clause that provided that:

> "If Champion hereafter grants a license to a third party (other than a Subsidiary of LICENSEE) to practice all of the subject matter licensed under this Agreement and subject to more favorable royalty terms than those set forth in ARTICLE III of this Agreement, CHAMPION shall promptly notify LICENSEE in writing of said more favorable royalty terms.  Upon written request given by LICENSEE in writing within sixty (60) days after receipt of such notice, LICENSEE shall be entitled to the benefit of such more favorable terms as and from the date they became effective and only so long as they remain in effect with such third party; provided, however, that LICENSEE accepts all other applicable terms and conditions of such third party license; and provided further that in comparing royalty terms CHAMPION may assign a reasonable monetary value to any rights

2

received from said third party by way of consideration for such third party license.**"**

[Carotek License Agreement, para.12.1, Ex. 1]

Beginning in 2000, Champion Paper extended more favorable license terms under the same Champion Patents to another licensee by allowing that party to practice under a license agreement without paying any royalties.   [Kobayashi Memo in Papertech case, Ex. 2].  We now know from Kobayashi's own judicial admission that the other party, Papertech, Inc., ("Papertech") is claimed by Kobayashi to have never properly terminated its License Agreement with Champion.  Id. at p. 6.  Accordingly, Kobayashi claims that the License Agreement with Papertech is still in effect, meaning that for five years Carotek paid royalties to Champion while Papertech did not.   Id.

Carotek learned in 2005 that Papertech had not paid royalties since 2000 and inquired of Champion regarding its rights under the Carotek License Agreement. [Ex. 3].  Champion failed to respond until 2007, when Kobayashi, which claims to be the owner by assignment of the Caroteck License Agreement, sent Carotek a letter, dated November 27, 2007,  notifying Carotek of an alleged default.   [Ex. 4].

Kobayashi claims to have purchased the Carotek License Agreement from the prior owner on December 10, 2007. [Ex. 5].  Thus, as set out below, Kobayashi did not own the Carotek License Agreement as it said it did in the pre-December 10, 2007 letters purporting to terminate the license. [Ex. 4].

Carotek filed this Declaratory Judgement Action against Kobayashi on December 11, 2007, seeking a declaratory judgment that Carotek was entitled to those more favorable licensee terms and that Carotek was owed overpaid royalties from the time of the extension of those more

3

favorable terms beginning in 2000 to the present. [Carotek Decl. Judg. Complaint of December 11, 2007].

Carotek sold the part of its business relating to the Carotek License Agreement to ECS, on December 31, 2007. [Bell Depo. p. 12, l. 14-17, Ex. 6]. ECS has also been threatened with suit for infringement by Kobayashi, and has filed is own Declaratory Judgment action with this Court, which is now consolidated with the prior-filed Carotek action. [ECS Decl. Judg. Complaint of June 24, 2008].

### B.    The Champion Patents

United States Letters Patent No. 5,717,456 was issued on February 10, 1998 to Robert J. Rudt, et al on an application filed on March 6, 1995 for "System for Monitoring a Continuous Manufacturing Process" (the '456 patent). United States Letters Patent No. 5,821,990 was issued on October 13, 1998 to Robert J. Rudt, et al on an application filed on September 3, 1997 for "System for Monitoring a Continuous Manufacturing Process" (the '990 patent). United States Letters Patent No. 6,211,905 was issued on April 3, 2001 to Robert J. Rudt, et al on an application filed on July 30, 1998 for "System for Monitoring a Continuous Manufacturing Process (the '905 patent)." The '990 and '905 patents are divisional patent applications sharing the same disclosure as the '456 patent, and all of these applications are termed the "Champion Patents." [collectively the "Champion Patents", Ex. 7].

### C.    The Carotek License Agreement.

On December 8, 1998, Carotek and Champion International Corporation executed a license agreement granting a non-exclusive right under the Champion Patents to make, use, and sell the subject matter covered by the Champion Patents. [Ex. 1]. The Carotek License

Agreement provides for payment of royalties to Champion on the manufacture and sale of products covered by the Carotek License Agreement, and contains the usual provisions found in almost all such license agreements.  Carotek has fully complied with all of the terms of the Carotek License Agreement, and paid royalties to Champion until 2005.  Champion later merged to become International Paper, Inc. ("International Paper"). [Kobayashi Answer and Counterclaim of February 8, 2008, ¶ 38].

      **D.**      **Jacklin Associates Acquires The Champion License Agreement And The Patents From International Paper On October 19, 2007.**

On October 19, 2007, Jacklin Associates ("Jacklin") and International Paper executed a "Patent Purchase Agreement" purporting to transfer all of "Seller's right, title, and interest in such patent rights."  [Ex. 5].  The Jacklin agreement explicitly recited a "Transfer of Rights" clause that included "(i) the Assigned Patent Rights together with all causes of action" and "(ii) the Assigned Agreements together with the right to collect royalties, license fees or other payments under or on account of any of the Assigned Agreements."  Id. at p. 3, para. 3(i).   The Agreement was transferred in consideration of $75,000 and an accounting of half of all collected royalties.   Id. at p. 2, ¶ 2.1.  Just weeks later, Jacklin then sold the assets it had just purchased to Kobayashi for $80,000. [Dechman Depo, p. 111, line 22, Ex. 8].  It appears that Jacklin's only purpose was to place an additional party in the chain of title between International Paper and Kobayashi Ventures, a company co-owned by a competitor of International Paper and a licensee under the agreement.  Id. at p. 66, line 6-8.

5

E.    **Kobayashi Ventures Sends Demand Letters To Carotek On October 29, November 9, And November 26, 2007, With The November 26 Letter Purporting To Terminate The Agreement.**

Kobayashi Ventures sent demand letters to Carotek on October 29, November 9 and November 26, 2007, demanding payment of allegedly due royalty arrearage. [Ex. 9, 10, and 4]. The November 26, 2007 letter purported to place Carotek on notice of default.  Kobayashi Ventures had not been assigned any interest in the Champion Patents or the Carotek Agreement at the time of mailing any of the letters.

F.    **Kobayashi Purportedly Acquires Title Arising From The Patents On December 10, 2007 After Sending The Letters Referenced In Section E.**

On December 10, 2007, Kobayashi Ventures, Inc. and Jacklin Associates executed a "patent assignment" purporting to transfer "the right, title and interest in and to the Patents." [Ex. 5].  The Agreement makes no mention of a transfer of rights to the Agreement or to the transfer of rights to sue for past infringement.

G.    **Kobayashi Files Suit Against Papertech In The Eastern District Of Virginia.**

Shortly after Carotek filed suit against Kobayashi on December 11, 2007, Kobayashi filed a patent infringement suit against Papertech on or about December 27, 2007 in the Eastern District of Virginia, claiming that a 2000 letter from Papertech to Champion had terminated the license agreement, and that Papertech was therefore an infringer of the Champion Patents.  [Ex. 11].   Papertech responded by filing a Motion to Dismiss, asserting that the Virginia Federal Court lacked personal jurisdiction over Papertech, or in the alternative, seeking transfer to this Court. [Papertech Brief in Support of Motion to Dismiss, Ex. 12].  The Virginia Federal Court specifically addressed the issue of whether Kobayashi had legal title to the Champion Patents.

6

After reciting the transactional history, including the above-referenced Jacklin transfer, the Court noted that while Jacklin appeared to have acquired the right to sue for past infringement, Jacklin clearly had not transferred those rights to Kobayashi:

> This language [transfer language in the Jacklin to Kobayashi Assignment] in contrast, clearly is not sufficient under the standard articular in <u>Minco</u> and Arachnid to assign Jacklin Associates' right to sue for past infringement to Kobayashi. The "Patent Assignment" contains no reference to past infringement whatever and makes no reference to the respective rights of Kobayashi and Jacklin Associates to sue for infringement that took place before the assignment was consummated. Therefore, this Court may only exercise personal jurisdiction over Papertech if Kobayashi's claims arise out of Papertech's activities in Virginia after December 10, 2007.

[Order of May 7, 2007 at 8-9, Ex. 13].

The suit between Kobayashi and Papertech was transferred to this district because Kobayashi did not acquire the right to sue for past patent infringement of the Champion Patents predating December 10, 2007, and since Papertech had not sold any systems that could potentially infringe the Champion Patents after December 10, 2007, then personal jurisdiction could not be established over Papertech in Virginia. <u>Id</u>. Central to that suit was Kobayashi's allegation that Papertech had terminated the license agreement between Papertech and Champion in 2000. <u>Id</u>. at 9-11. Kobayashi has not appealed or otherwise challenged the Order and Opinion of the Virginia Federal Court, and Kobayashi is precluded on the basis of issue preclusion from attempting to relitigate any issues litigated and resolved in that action.

Accordingly, the present posture of this case is that Kobayashi apparently owns the Carotek License Agreement as of December 10, 2007, but Jacklin retains the right to sue for infringements occurring and royalties accrued before that date.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT OF LACK OF STANDING

Lack of jurisdictional standing can be raised at any time.  Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1367 (Fed. Cir. 2003) ("It is well-established that any party, and even the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation, including on appeal.").  Thus, it is proper at this time to raise standing issues, and to foreclose any attempt by Kobayashi to recover either royalties claimed to be past due, or damages for any alleged patent infringement.  The issues are simple, clear-cut and disposed of by the Court's Order in Virginia holding that the assignment by which Kobayashi claims its right to sue "clearly is not sufficient under the standard articular in Minco and Arachnid to assign Jacklin Associates' right to sue for past infringement to Kobayashi. [Virginia Order at 8, Ex. 13].

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  On a motion for summary judgment, the facts are viewed in the light most favorable to the non-moving party, while drawing all reasonable inferences in its favor.  Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir.1998).

The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element

essential to its case, and on which it will bear the burden of proof at trial. <u>Cleveland v. Policy</u>

<u>Management Systems Corporation</u>, 526 U.S. 795, 805-06 (1999) *citing* <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322 (1986).

## IV.    ARGUMENT

### A.    Kobayashi Ventures Does Not Have Standing To Sue For Alleged Patent Infringement Against Carotek Or ECS Occurring Before December 10, 2007.

Kobayashi Ventures does not have standing to sue for alleged patent infringement

occurring before December 10, 2007 because Kobayashi did not acquire the right to sue for past

patent infringement in the transfer agreement between Jacklin Associates and Kobayashi.

Accordingly, the claims directed towards patent infringement occurring before December 10,

2007 should be dismissed. An assignment of a patent does not ordinarily include the right to sue

for past infringement. <u>Crown Die & Tool Co. v. Nye Tool & Mach. Works</u>, 261 U.S. 24, 43

(1923) (the assignee may sue for past infringement if the "owner assigns the patent and also the

claim for past infringements to the same person"); see <u>Arachnid, Inc. v. Merit Indus., Inc.</u>, 939

F.2d 1574, 1579 (Fed. Cir. 1991) (noting that the transfer of the right to sue for past infringement

"cannot be inferred from an assignment of the patent itself"). These cases establish a general rule

that the right to sue for prior infringement is not transferred unless the assignment agreement

manifests an intent to transfer this right. <u>Minco, Inc., v. Combustion Engineering. Inc.</u>, 95 F.3d

1109, 1117-18 (Fed. Cir. 1996).

The assignment from International Paper to Jacklin appears to have transferred

International Paper's right to sue for past infringement to Jacklin. However, the assignment from

Jacklin to Kobayashi contained no express language effecting a transfer of the right to sue for

past patent infringement.  The assignment contains no mention of the transfer of any rights for past causes of action relating to the patents.  As noted above, the Federal Court in Virginia has already determined as a matter of law that:

> This language [transfer language in the Jacklin to Kobayashi Assignment] in contrast, clearly is not sufficient under the standard articular in <u>Minco</u> and Arachnid to assign Jacklin Associates' right to sue for past infringement to Kobayashi.  The "Patent Assignment" contains no reference to past infringement whatever and makes no reference to the respective rights of Kobayashi and Jacklin Associates to sue for infringement that took place before the assignment was consummated.

[Order at 8-9, Ex. 13].

### B.    Kobayashi Ventures Does Not Have Standing To Sue For Allegedly Unpaid Royalty Payments Due Under The License Agreement.

The assignment from Jacklin Associates to Kobayashi Ventures was likewise insufficient to transfer a right to sue for royalty obligations allegedly due under the License Agreement.  It is the primary rule of construction of contracts that "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein".  <u>Nichols v. Nichols</u>, 306 N.Y. 490, 496 (1954). The words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties. See, <u>Laba v. Carey</u>, 29 N.Y.2d 302, 327 (N.Y. 1971); <u>Levine v. Shell Oil Co.</u>, 28 N.Y.2d 205 (N.Y. 1971).

The assignment from International Paper to Jacklin transferred the "Assigned Agreements together with the right to collect royalties, license fees or other payments under or on account of any of the Assigned Agreements." [p. 3, para. 3(i), Ex. 14].  However, the assignment expressly reserved to International Paper the right to collect for royalty obligations allegedly due under the contract: "Purchaser (Jacklin) accepts no, and shall not have any,

10

responsibilities or obligations of any kind with respect to any liability, claims, demands or causes of actions that may have accrued or existed under the Assigned Agreements, or otherwise, prior to the date notice is given under the Assigned Agreements but shall be responsible for such liability, claims, demands or causes of actions that accrue with respect to Listed Agreements subsequent to the date of such notice." Id. at p. 3, para. 3(ii).

Accordingly, if any right exists to collect for allegedly due royalty obligations under the license agreement, that right exists, not even with Jacklin, but only with International Paper and certainly not Kobayashi, which is twice removed from any such right. Even if the transfer from International Paper to Jacklin had transferred the right to sue for allegedly due royalty obligations under the License Agreement, no transfer of such rights was by Jacklin to Kobayashi.

**C.    Champion Violated The Most Favored Licensee Clause When It Extended More Favorable License Terms To At Least One Other Licensee.**

On December 8, 1998 International Paper and Carotek entered into a licensing agreement in regards to a $CV^2$ system, which contained a "most favored licensee" clause.

> The most favored licensee provision of the License Agreement states:
> "If Champion hereafter grants a license to a third party (other than a Subsidiary of LICENSEE) to practice all of the subject matter licensed under this Agreement and subject to more favorable royalty terms than those set forth in ARTICLE III of this Agreement, CHAMPION shall promptly notify LICENSEE in writing of said more favorable royalty terms. Upon written request given by LICENSEE in writing with sixty (60) days after receipt of such notice, LICENSEE shall be entitled to the benefit of such more favorable terms as and from the date they became effective and only so long as they remain in effect with such third party; provided, however, that LICENSEE accepts all other applicable terms and conditions of such third party license; and provided further that in comparing royalty terms CHAMPION may assign a reasonable monetary value to any rights received from said third party by way of consideration for such third party license."

11

[Carotek License Agreement at paragraph 12.1, Ex. 1].

The purpose of a "most favored licensee" clause is to "guarantee that no other licensee will be given the opportunity to use the patent at a more favorable rate." Epic Systems Corporation v. Allcare Health Management System, Inc., 2002 WL 31051023 (N.D. Tex. 2002) citing Cardinal of Adrian, Inc. v. Amerock Corp., 208 U.S.P.Q. 822, 823 (E.D. Mich. 1979). A "most favored licensee" clause protects a licensee against competitive disadvantage. Carpenter Technology Corp. v. Armco, Inc., 800 F.Supp. 215, 224 (E.D. Penn. 1992).

It is clear that Champion had a unilateral obligation to extend any more favorable terms to Carotek:

> It was [licensor's] duty under the contract to notify [licensee], and, had it done so, [licensee], upon its election, would automatically have been entitled to the same terms, i.e. to be relieved of payment of royalties.

St. Joseph Iron Works v. Farmers Mfg. Co., 106 F.2d 294, 299 (4th Cir. 1939).

In St. Joseph Iron Works, licensor St. Joseph Iron Works ("St. Joseph") filed suit against licensee Farmers Manufacturing Company ("Farmers") to recover royalties under a patent licensing agreement. Farmers then filed a counterclaim for royalties already paid due to a breach of the "most favored licensee" clause of their contract with Farmers. The District Court found in favor of Farmers, the licensee, and the Fourth Circuit affirmed the District Court's finding.

The facts in St. Joseph Iron Works are strikingly similar to the facts presented here. In St. Joseph Iron Works, Farmers entered into a patent licensing agreement with St. Joseph. Id. at 295. The patent licensing agreement contained a "most favored licensee" clause. Id. at 296. Later St. Joseph equipped another customer's machine to manufacture the invention covered by

the patent licensed to Farmers.  Id.  St. Joseph did not collect royalties from this other customer

and did not notify Farmers of the agreement with the other customer.  Id.  Farmers discovered

that the other customer was not paying royalties and stopped paying royalties.  Id.  St. Joseph

then filed suit to collect the royalties and Farmers counterclaimed to recover the royalties paid

while the other customer was not paying royalties.  Id.

     The St. Joseph Iron Works court directly addressed the issue of what damages are

recoverable in this type of situation when it stated:

> There can be no question but that a breach of the contract in this
> vital matter precluded the recovery of royalties; for if defendant
> had been given the opportunity by proper notice to be free of
> royalties, as was [the other licensee] it would admittedly have
> exercised its right in premises.  And we think it equally clear that
> defendant is entitled to recover of plaintiff on its counterclaim the
> royalties which it paid in ignorance of its rights and as a result of
> the failure of the plaintiff to give notice which the contract
> required.  The payment of the royalties was a damage which it
> sustained as a result of the plaintiff's breach of contract; and it may
> recover them of plaintiff as damages for the breach.

St. Joseph Iron Works, 106 F.2d at 299.

     Applying these principles to the present case, Carotek can fully recover any royalties paid

while the other licensee was not paying any royalties, in this case, all royalties paid since the

year 2000.  Additionally, Carotek would not owe any royalties allegedly underpaid under the

license agreement.

     The court, when discussing St. Joseph's lack of notification to Farmers about the other

licensee's more favorable terms, stated, "[f]ailure to give such notice was a clear breach of the

contract, and the breach was not cured by the subsequent rejection of the claims."  Id. at 298.

Kobayashi has admitted to a failure to collect royalty payment from another licensee. [Kobayashi Notice of Opposition, p. 3, ¶ 4, 2008, Ex. 2].  Some courts look at the failure to collect royalties from a licensee as conveying an implied royalty-free license.  The Federal Circuit has noted that "[C]ourts and commentators relate that implied licenses arise by acquiescence, by conduct, by equitable estoppel (estoppel in pais), or by legal estoppel."  Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc., 103 F.3d 1571, 1580 (Fed. Cir. 1997). Thus, by allowing another licensee to stop making royalty payments or by failing to collect royalty payments, Champion in effect granted an implied license to Papertech to use the patents without payment.  Carotek, because of the "most favored licensee" clause in its license agreement with Champion, has a right to the same terms.

As noted above, at one time Kobayashi took the position that the Papertech License Agreement had been terminated in 2000, and that Papertech was therefore an infringer of the Champion Patents.  [Kobayashi Brief in Opposition to Papertech's Motion to Dismiss/Transfer at 1, Ex. 15].  According to this argument, since Papertech terminated its Agreement, it was an infringer, not a licensee and thus had no obligation to pay royalties.  Absent such an obligation, Kobayashi has argued to this court there was no other licensee that was "most favored" in relation to Carotek.  However, Kobayashi has now changed its tune and its legal position 180 degrees.  Now Kobayashi has dismissed its patent infringement claims against Papertech, and instead now claims that Papertech never properly terminated the license agreement with Champion, and owes royalties all the way back to 2000, when Papertech stopped paying. [Kobayashi Notice of Opposition, p. 2-4, Ex. 2].

14

Whatever this change of position may mean in relation to its claims against Papertech, it clearly establishes by means of this admission and argument that, according to Kobayashi, Papertech always has been and remains a licensee.  Not having paid royalties since 2000, Papertech has the status, <u>according to Kobayashi</u>, of a non-paying licensee and by this fact clearly confers on Carotek the status of a licensee entitled to the benefit of "most favored licensee" in the Carotek License Agreement.  Kobayashi has staked itself out for the proposition that Papertech never properly terminated its License Agreement with Champion.  Judicial estoppel should preclude Kobayashi from now coming before this Court and claiming otherwise.[1]  See, <u>Festinger v. Edrich,</u> 32 A.D. 3d 412, 413 (N.Y.A.D. 2006) (plaintiff previously claimed at a criminal sentencing hearing that he had no assets, but in a later case claimed to own an interest in his sister's property–"an application of the doctrine [of  judicial estoppel] also was essential to avoid a fraud on the court and a mockery of the truth-seeking function."); <u>Perkins v. Perkins</u>, 226 A.D.2d 610 (N.Y.A.D. 1996)(former husband claimed an interest in former wife's property, but the court applied judicial estoppel because he had claimed just the opposite in another case–he "should not be permitted to play fast and loose with the courts by advocating contrary positions in different legal proceedings.") Kobayashi wants to have it both ways–to sue for back royalties from Carotek, claiming on the one hand that the most favored licensee rule is

─────────────────────

[1]In fact, one of the principle owners of Kobayashi testified that as a licensee under the same license agreement, he had taken the position that failing to collect royalties from another licensee constituted a breach of the most favored licensee provision. [See generally Dechman Depo. p. 53-60, Ex. 8; and MTC letter to Champion, Ex. 16].

15

inapplicable because Papertech terminated the agreement and thus was not a non-paying licensee, and claiming on the other hand that Papertech never terminated the agreement and thus itself owed royalties and not damages for infringement.

The Court should grant summary judgment for Carotek on this issue.

**D.    Kobayashi Did Not Own The Carotek License Agreement Or Champion Patents When It Gave Notice Of Termination, Meaning That Carotek Is Still Protected By The Terms Of The Carotek License Agreement**

The facts are not in dispute.  Kobayashi Ventures sent demand letters to Carotek on October 29, November 9, and November 26, 2007, demanding payment of allegedly due royalty arrearage. [Ex. 9, 10, and 4].  The November 26, 2007 letter purported to place Carotek on notice of default. [Ex. 4].  Kobayashi Ventures had not been assigned any interest in the Champion Patents or the Carotek Agreement at the time of mailing any of the letters.  By its own pleading, it was not until December 10, 2007, that Kobayashi Ventures, Inc. and Jacklin Associates executed a "patent assignment" purporting to transfer "the right, title and interest in and to the Patents" from Jacklin to Kobayashi. [Kobayashi Answer and Counterclaim, ¶ 36].  Thus, any act undertaken by Kobayashi before December 10, 2007 was a nullity.  Kobayashi has done nothing since December 10, 2007 to rectify this fatal flaw.  Thus, Kobayashi remains a licensee of the Carotek License Agreement, and is fully protected from patent infringement suit by Kobayashi. United Mfg. & Service Co. v. Holwin Corp., 187 F.2d 902, 905 (7th Cir. 1951) ("It is also clear that while the license agreement is still in effect the owner of the patent cannot sue for infringement.")

Furthermore, as discussed in section B, *supra*, Kobayashi has no legal title to the license agreement and therefore, has no authority to terminate the license agreement.

## V.  Conclusion

For all of the reasons set out above, Carotek respectfully requests the Court to enter Summary Judgment in its favor that:

(1)     Kobayashi does not have standing to sue for alleged patent infringment against Carotek or ECS occurring before December 10, 2007;

(2)      Kobayashi does not have standing to sue for an alleged breach of a License Agreement to which Carotek is a party (Carotek License Agreement), because Kobayashi does not have legal title to the Carotek License Agreement; and

(3)     Carotek is owed past royalty moneys overpaid to Kobayashi or its alleged predecessors-in-interest because of violation of the terms of a most favored licensee clause found in the license agreement; and

(4)     Kobayashi did not own the Carotek License Agreement or Champion Patents when it gave notice of termination, meaning the Carotek is still protected by the terms of the Carotek License Agreement;

and to dismiss the Counterclaim against Carotek in its entirety.

Respectfully submitted,

__/s/ Raymond R. Castello _____
Raymond R. Castello (RC 2106)
Fish & Richardson P.C.
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022-4611
Telephone: 212-765-5070
*Attorney for Plaintiff Carotek, Inc. and*
*Event Capturing Systems, Inc.*

17

**OF COUNSEL:**
W. Thad Adams, III, Esq. (N.C. Bar Number 00,020)
**ADAMS INTELLECTUAL PROPERTY LAW, P.A.**
201 South College Street, Suite 2350 Charlotte Plaza
Charlotte, NC   28244
Tel:  (704) 375-9249
Fax: (704) 375-0729
litigation@adamspat.com

18

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON STANDING, OWNERSHIP, AND MOST FAVORED LICENSEE ISSUES** was served on the Defendant by sending copies by E-Mail:

> Alexia Bourgerie
> Jeffrey Schwaber
> Stein, Sperling, Bennett, De Jong & Greenfeig, PC
> 25 West Middle Lane
> Rockville, MD 20850
> abourgerie@steinsperling.com
> jschwaber@steinsperling.com

on September 3, 2008.

_____/s/ Miranda Perkins_____

19