**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
CAROTEK, INC.,                                          :
                                                        :
                         Plaintiff/Counter-defendant    :
                                                        :
        -against-                                       :    07 Civ. 11163 (NRB)
                                                        :    **DEFENDANT/COUNTER-**
KOBAYASHI VENTURES, LLC,                                :    **PLAINTIFFS' AMENDED**
                                                        :    **COUNTERCLAIM**
        and                                             :
                                                        :
EQUAPHOR, INC.                                          :
                                                        :
        and                                             :
                                                        :
JACKLIN ASSOCIATES, INC.                                :
                                                        :
                         Defendant/Counter-plaintiffs.  :
------------------------------------------------------------x
EVENT CAPTURING SYSTEMS, INC.,                          :
                                                        :
                         Plaintiff/Counter-defendant    :
                                                        :
        -against-                                       :
                                                        :
KOBAYASHI VENTURES, LLC,                                :
                                                        :
        and                                             :
                                                        :
EQUAPHOR, INC.                                          :
                                                        :
        and                                             :
                                                        :
JACKLIN ASSOCIATES, INC.                                :
                                                        :
                         Defendant/Counter-plaintiffs.  :
------------------------------------------------------------x

## AMENDED COUNTERCLAIM

        Counter-plaintiffs Equaphor, Inc. ("Equaphor") and Jacklin Associates, Inc. ("Jacklin"),

by and through their attorneys, Jeffrey M. Schwaber and Stein, Sperling, Bennett, De Jong,

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Driscoll & Greenfeig, P.C., hereby sue and demand legal damages in their favor and against Counter-defendants, Carotek, Inc. ("Carotek") and Event Capturing Systems, Inc. ("ECS"),[1] on grounds as follows:

INTRODUCTION

1.     This is an action brought by Equaphor and Jacklin for, among other things, patent infringement arising under the patent laws of the United States, Title 35, United States Code, and for unpaid royalties and other fees due under a License Agreement.  Through a series of corporate transactions, Equaphor became the exclusive owner of, among other things, three U.S. patents and a variety of foreign patents that relate to the invention(s) of synchronizing cameras to the speed of a moving web ("Equaphor's Patented Technology," detailed in ¶ 12 below).

2.     Equaphor's Patented Technology has been pivotal in the web monitoring industry and its direct customers—the paper, plastics and printing industries—facilitating digital monitoring and capturing of events during the manufacturing process to increase production efficiencies.  Equaphor's Patented Technology has accomplished that which previously had not been possible, enabling the production of higher quality product at great savings to manufacturers and ultimately to consumers.

3.     With conscious disregard for the patent laws of the United States of America, the License Agreement, and Equaphor's Patented Technology, Carotek and/or ECS have been violating U.S. patent laws, the License Agreement, and the legal rights of Equaphor, among others.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

---

[1]  ECS erroneously identified itself as "Event Capturing Systems, Inc." in its Declaratory Judgment Complaint and Complaint for Affirmative Monetary Relief.  ECS' Articles of Incorporation identify it as "Event Capture Systems, Inc."

4.      In this Amended Counterclaim, Equaphor and Jacklin seek relief in their favor and against Carotek and ECS.  Given the history and current posture of this lawsuit, which began as two separate proceedings initiated by Carotek and ECS, and given certain events which have transpired since Carotek filed its Complaint, Equaphor and Jacklin assert herein alternative claims for relief.  Specifically, as more fully alleged hereinbelow, Equaphor and Jacklin claim the following in the alternative:

- o  To the extent that the License Agreement terminated, Equaphor claims patent infringement against Carotek after the date of such termination (Equaphor's First and Second Counterclaims against Carotek).

- o  To the extent that the License Agreement never terminated, Equaphor claims that Carotek continues to be bound by the License Agreement, and continues to breach its obligations thereunder (Equaphor's Third Counterclaim against Carotek).  Equaphor additionally claims that Carotek breached the License Agreement before any conceivable termination became effective and therefore is liable for those breaches regardless of the fact or date of termination.

- o  To the extent that Equaphor's rights to pursue any of the following claims are limited in any way, including but not limited to inexplicit assignment of the right to sue for past infringement, Jacklin hereby asserts those rights.

- o  To the extent that ECS is an alter ego of Carotek, and the License Agreement was not terminated, Equaphor claims that Carotek continues to be bound by the License Agreement with respect to ECS' business, and continues to breach its obligations thereunder (Equaphor's Third Counterclaim against Carotek);

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

o   To the extent that ECS is a separate and distinct company, Equaphor claims patent infringement against it and conspiracy between it and Carotek (Equaphor's Fourth and Fifth Counterclaims against ECS and Eighth Counterclaim against Carotek and ECS).

<u>PARTIES</u>

5.      Equaphor, f/k/a Monitoring Technology Corporation, is a corporation organized and existing under the laws of the State of Delaware.  The business of Equaphor is, among other things, to own, maintain and prosecute Equaphor's Patented Technology.

6.      Jacklin is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.  As it relates to this Amended Counterclaim, the business of Jacklin is, among other things, to serve as a pass-through entity for the purchase and subsequent assignment of Equaphor's Patented Technology.

7.      Carotek is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Matthews, North Carolina.  Carotek provides event capturing camera products, equipment, systems and software (collectively, "Event Capturing Systems" or "ECS Systems" or "ECS" or "ECS II" or "ECS v.10" or "Mobile ECS" or "Shippable ECS" or "Portable Laptop ECS") used in the paper, printing and other web monitoring industries.  These systems in fact incorporate and rely on Equaphor's Patented Technology.

8.      ECS is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Matthews, North Carolina.  Upon information and belief, ECS provides event capturing camera products, equipment, systems and software (collectively, "Event Capturing Systems" or "ECS Systems" or "ECS" or "ECS II" or "ECS

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

v.10" or "Mobile ECS" or "Shippable ECS" or "Portable Laptop ECS") used in the paper, printing and other web monitoring industries. These systems in fact incorporate and rely on Equaphor's Patented Technology.

## JURISDICTION AND VENUE

9.    Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1338, and 1367, and 35 U.S.C. § 281.

10.    This Court has personal jurisdiction over Carotek as Plaintiff/Counter-defendant in this action.

11.    Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. 1400(b).

## FACTUAL ALLEGATIONS

12.    On or about September 26, 2009, by written assignment executed and delivered by Kobayashi Ventures, LLC ("Kobayashi Ventures") to Equaphor (f/k/a Monitoring Technology Corporation), Equaphor became, and now is, the owner, *inter alia*, of all right, title, and interest in and to such letters patent (previously and hereinafter referenced as "Equaphor's Patented Technology"), having the exclusive right to make, use, sell, offer for sale, and import into the U.S. the following inventions:

> U.S. Patent No. 5,717,456
> U.S. Patent No. 5,821,990
> U.S. Patent No. 6,211,905
> And all related foreign patents.

Attached hereto as <u>Exhibit 1</u> and incorporated herein by reference is the Patent Purchase Agreement, Exhibit D of which is the Assignment of Patent Rights. Such Assignment of Patent Rights was recorded in the Patent and Trademark Office on November 2, 2009 at Reel/Frame 023456/0091.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                5

13.    On or about December 10, 2007, by written assignment executed and delivered by Jacklin Associates, Inc. to Kobayashi Ventures and amended on August 25, 2008, Kobayashi Ventures became the owner, *inter alia*, of all right, title, and interest in and to such letters patent (identified in ¶ 12 above), then having the exclusive right to make, use, and sell Equaphor's Patented Technology.  Attached hereto collectively as <u>Exhibit 2</u> and incorporated herein by reference are the Patent Assignment and the Amended Patent Assignment (together, "Patent Assignment").  Such Patent Assignment was recorded in the Patent and Trademark Office on December 11, 2007 at Reel/Frame 020218/0844.

14.    On or about October 19, 2007, by written assignment executed and delivered by International Paper Company ("International Paper") to Jacklin Associates, Inc., Jacklin Associates became the owner, *inter alia*, of all right, title, and interest in and to such letters patent (identified in ¶ 12 above), then having the exclusive right to make, use, and sell Equaphor's Patented Technology.  Attached hereto as <u>Exhibit 3</u> and incorporated herein by reference is the Patent Purchase Agreement, Exhibit D of which is the Assignment of Patent Rights.  Such Assignment of Patent Rights was recorded in the Patent and Trademark Office on December 11, 2007 at Reel/Frame 020218/0823.

15.    International Paper became the owner of all right, title, and interest in and to such letters patent (identified in ¶ 12 above) by virtue of assignment from each of the inventors to its predecessor company Champion International Corporation ("Champion"), which became International Paper through a merger.  The inventors' assignment was executed March 2, 1995 and recorded in the Patent and Trademark Office on March 6, 1995 at Reel/Frame 007382/0557, and the merger document was executed December 31, 2000 and recorded in the Patent and Trademark Office on November 26, 2007 at Reel/Frame 020143/0440.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

16.    On or about December 8, 1998, Carotek entered into a License Agreement with Champion, acquiring certain patent rights to what is now known as Equaphor's Patented Technology.  Attached hereto as <u>Exhibit 4</u> and incorporated herein by reference is the License Agreement.

"Article III—Royalties" of the License Agreement states in pertinent part as follows:

… LICENSEE shall pay to CHAMPION a running royalty of FIVE PERCENT (5%) of the Net Sales Price of $CV^2$ System for each of said $CV^2$ Installations.

"Article I—Definitions" of the License Agreement states in pertinent part as follows:

"Cost of Services" shall mean the cost of consulting, engineering, installing, supervising and like services performed by or for LICENSEE for the sale and installation of $CV^2$ System and shall be equal to TEN PERCENT (10%) of the total gross selling price for the $CV^2$ System.

"Net Sales Price" shall mean the sum of the Cost of Services and the gross price of Commercial Sales of $CV^2$ System less packaging charges, transportation charges; insurance against loss or damage in transit; sales, excise used and similar taxes directly incurred by LICENSEE in connection with the relevant Commercial Sale; importation duties and levies and selling commissions by resellers and agents who are not Subsidiaries of LICENSEE.  If $CV^2$ System are sold, licensed, installed, designed, leased or otherwise transferred as components of combined system, the Net Sales Price for $CV^2$ System shall be calculated by multiplying the Net Sales Price of said combined system as determined above by a fraction, the denominator of which is equal to the total list price of said combined system and the numerator of which is equal to the list price of said $CV^2$ System.

Therefore:

<u>Royalty Due Per $CV^2$ System Sold to bona fide purchaser</u> =  0.05 x 1.10 x [Gross Price of Commercial Sale – Directly Incurred LICENSEE costs (packaging + transport + transport insurance + taxes + duties + third party commissions)]

17.    Upon information and belief, since December 8, 1998, Carotek has repeatedly engaged in $CV^2$ Installations, as defined by the License Agreement, and otherwise has made, used, sold and offered for sale products embodying Equaphor's Patented Technology.  Though

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Carotek made some royalty payments under the License Agreement, Carotek ceased making payments not later than June 2005.

18.    "Article XII—Most Favored License" of the License Agreement states as follows:

12.1    If Champion <u>hereafter</u> grants a license to a third party (other than a Subsidiary of LICENSEE) to practice all of the subject matter licensed under this Agreement and subject to more favorable royalty terms than those set forth in ARTICLE III of this Agreement, CHAMPION shall promptly notify LICENSEE in writing of said more favorable royalty terms.  Upon written request given by LICENSEE in writing within sixty (60) days after receipt of such notice, LICENSEE shall be entitled to the benefit of such more favorable terms as and from the date they became effective and only so long as they remain in effect with such third party; provided, however, that LICENSEE accepts all other applicable terms and conditions of such third party license; and provided further that in comparing royalty or other terms CHAMPION may assign a reasonable monetary value to any rights received from said third party by way of consideration for such third party license.

[Underscore added.]

19.    On June 7, 2005, Carotek, by its CEO J. Addison Bell, sent a letter to International Paper by its Chief Counsel Richard C. Stewart, II taking an erroneous position based on the most favored license provision at Article XII of the License Agreement that another licensee Papertech, Inc. "ha[d] not paid any royalties on the patents for a considerable time period[,]" and therefore Carotek had no obligation to make royalty payments and was entitled to recover royalty payments previously made.  Attached hereto as <u>Exhibit 5</u> and incorporated herein by reference is this letter.

20.    On October 29, 2007, Kobayashi Ventures provided to Carotek a letter stating as follows:

This law firm has been engaged to represent Kobayashi Ventures, LLC, assignee of all right, title and interest of Champion International Corporation pursuant to that certain License Agreement between your company and Champion dated December 8, 1998 (the "Agreement").  Kobayashi is in the process of assessing and pursuing its claims arising, inter alia, out of that Agreement and out of the patent rights associated with the proprietary process monitoring system

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

referenced therein.

Please provide me within ten (10) days of the date of this letter with a copy of your most recent license agreement with Champion International Corporation, along with an accounting of any and all payments made by your company either pursuant to the Agreement or otherwise as a result of your use of the proprietary process monitoring system and related technology as referenced therein. To the extent you have not already done so, please provide promptly the minimum guaranteed annual fees set forth in Paragraph 3.4 of the license agreement for each of the years since the execution of that agreement. These funds should be made payable to Kobayashi Ventures, LLC, and remitted to my attention within the same ten (10) day period delineated above. Upon receipt of the minimum royalty payments, we will apply those sums to your company's account, which will more fully be assessed upon receipt of the documents requested herein.

Thank you for your anticipated cooperation and for your immediate attention to this matter. I look forward to hearing from you.

Attached hereto as <u>Exhibit 6</u> and incorporated herein by reference is this letter.

21. On October 31, 2007, by letter from Carotek to Kobayashi Ventures, Carotek referred Kobayashi Ventures to counsel Joe C. Young.

22. On November 9, 2007, Kobayashi Ventures provided to Carotek, by its counsel Joe C. Young, a letter stating in pertinent part as follows:

In light of the fact that you now have this matter and presumably have had a chance to review the referenced Agreement, I would appreciate hearing from you promptly regarding the issues raised in my letter. Of particular importance is the need to bring current the arrearage on the minimum royalty payments set forth in the Agreement.

Attached hereto as <u>Exhibit 7</u> and incorporated herein by reference is this letter.

23. On November 26, 2007, Kobayashi Ventures provided to Carotek, by its CEO J. Addison Bell and its counsel Joe C. Young, a default notice letter (the "Default Notice Letter") stating in pertinent part as follows:

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

I wrote to Mr. Bell on October 29, 2007, and I wrote in follow up to Mr. Young on November 9, 2007.  As of this date, I have not received a substantive response to my two attempts to have Carotek reconcile its responsibilities under the Agreement, including but not limited to making the overdue royalty payments owed pursuant to Article 3 thereof.  As a result, Carotek is hereby placed upon formal notice of default, for its breaches, *inter alia* of Articles 3, 4 and 5 of the Agreement. Further pursuant to §16.2, this Agreement shall terminate on the thirty-first (31st) day after the date of this letter.

Please note that pursuant to §16.5 of the Agreement, upon termination, Carotek must immediately cease the design, manufacture, sale and installation of the technology or any derivation thereof covered under the following patents to monitor any continuous process, including but not limited to paper, pulp, printing, non-woven, films, rubber, metals, plastics, glass or any other continuous processes (the "Technology"):

U.S. Patent No. 5,717,456
U.S. Patent No. 5,821,990
U.S. Patent No. 6,211,905
Australian Patent Application No. 38274/95
Brazilian Patent Application No. PI 9510548-4
Chilean Patent Application No. 1898-95
Finish Patent Application No. 973611
Indonesian Patent Application No. P952441
Japanese Patent Application No. 8-526826
South Korean Patent Application No. 1997-706231
Malaysian Patent Application No. PI9703058
Mexican Patent Application No. 976703
New Zealand Patent Application No. 295027
Norwegian Patent Application No. 974012
South African Patent Application No. 95/9613
Canadian Patent Application No. 2,214,724

As made clear in §16.4, upon termination, Carotek remains obligated, *inter alia* for the royalty payments which have accrued prior to the effective date of termination.

Absent a timely cure of Carotek's defaults, Carotek must immediate notify its customers of the license termination effective thirty-one (31) days from the date of this letter, and of the prohibition on any Carotek customer's use of the referenced licensed Technology for any purpose.  Please provide written confirmation of that notification so Kobayashi may be assured that its intellectual property is being protected.

Thank you for your anticipated cooperation and for your immediate attention to this matter.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                                          10

Attached hereto as <u>Exhibit 8</u> and incorporated herein by reference is this Default Notice Letter.

24.     Carotek failed and refused to respond to Kobayashi Ventures' letters.

25.     Further, at all times relevant hereto, Carotek has been obligated, among other things, to mark on its products and integrated systems which use Equaphor's Patented Technology the words, "U.S. Patent(s) [and the number(s) of the patent rights applicable thereto]" or such other patent marking as Carotek reasonably may have been directed from the then holder of Equaphor's Patented Technology.   Upon information and belief, Carotek consistently has failed to do so.

26.     Further, at all times relevant hereto, Carotek has been obligated, among other things, to submit a semiannual report detailing all sales of systems incorporating Equaphor's Patented Technology.  Section 4.3 of the License Agreement states in part, "Accompanying each royalty payment shall be a written report showing the computation of such royalty payment with supporting information in sufficient detail for CHAMPION to understand the basis for computation.  LICENSEE shall render such written statement even if no royalty payment is due and payable to CHAMPION for a Reporting Period."   Carotek consistently has failed and refused to submit these mandatory reports.

27.     In summary, Carotek's actions include the following:

o     1998:  Entered into the License Agreement;

o     1998 to present**:**  Failed to pay all royalties due under the License Agreement and upon information and belief knowingly grossly underpaid royalties owed;

o     1998 to present: Failed to file the mandatory reports as required under section 4.3 of the License Agreement detailing all systems sold incorporating   Equaphor's Patented Technology;

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

o    2005:  Attempted to avoid royalty payments and sought return of royalty payments based on an objectively erroneous interpretation of most favored license provision of the License Agreement; and

o    2007:  Ignored requests for payment due under the License Agreement prior to termination.

28.    On December 11, 2007, Carotek filed the above-captioned lawsuit.

29.    Shortly thereafter, Carotek purports to have sold its ECS business for $1, without any documentation, to a newly formed entity, ECS, an entity (i) owned by J. Addison Bell, among others; (ii) located in the same office as Carotek; (iii) using the same shop as Carotek; (iv) using the same phone line as Carotek; and (v) serving the same customers that Carotek served.

30.    ECS is a fraudulently created entity, created with a sham transaction, and in connection with an effort by Carotek to avoid liability for, among other things, its continuous and systematic breaches of the License Agreement and/or patent infringement.

31.    On November 10, 2009, Carotek sent a letter to undersigned counsel stating, "Carotek hereby gives notice of the termination of the License Agreement ("Agreement") between Champion International Corp. and Carotek, Inc., dated December 8, 1998, pursuant to Paragraphs 16.3.3, 22.1 and 22.2 of the Agreement … ."  Attached hereto as <u>Exhibit 9</u> and incorporated herein by reference is this letter (the "Notice of Termination").

### AS AND FOR A FIRST COUNTERCLAIM AGAINST CAROTEK
Patent Infringement

32.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 above.

33.    Section 16.5 of the License Agreement states in pertinent part, "in the event that this Agreement is terminated pursuant to Paragraph 16.2, LICENSEE shall immediately cease the design, manufacture, sale and installation of CV2 System, except where such design,

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

manufacture, sale, installation, license or lease would not infringe a claim of Patent Rights which as not been held invalid in a final unappealable judgment of a court of competent jurisdiction." This section of the License Agreement makes it abundantly clear that Carotek proactively was given an effective actual notice of infringement by way of termination of the License Agreement, if it chose to continue to make, cause to be made, used, sold, and offered for sale products embodying the Kobayashi Patented Technology.

34.    Carotek failed and refused timely to cure its defaults under the License Agreement.  As a result, the License Agreement terminated on December 27, 2007.[2]

35.    Alternatively, to the extent that the License Agreement continued in effect beyond December 26, 2007, and to the extent that Carotek's Notice of Termination is permissible and effective under the License Agreement, the License Agreement terminated on December 11, 2009, thirty-one days after Carotek's November 10, 2009 Notice of Termination.

36.    After termination of the License Agreement, Carotek continued and continues to this day—without permission—to make, cause to be made, use, sell, and offer for sale products embodying Equaphor's Patented Technology.

37.    Specifically, since termination of the License Agreement, Carotek has, with full knowledge of the ownership by others identified above, infringed upon Equaphor's Patented Technology by engaging in conduct such as the following:

---

[2] Equaphor recognizes that this Court ruled, in its August 31, 2009 Memorandum and Order on summary judgment, that "Kobayashi simply did not have the authority to terminate the [License Agreement]" and therefore that, as of August 31, 2009, the License Agreement was still in effect. Memorandum and Order at 16.  Given the interlocutory nature of that Order, Equaphor maintains its allegations regarding the December 27, 2007 termination for the record in the event of an appeal.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                                13

(a)    making, causing to be made, using, selling, and offering for sale, without marking, license, permission and/or payment, products such as the following:  synchronizing event capturing systems, cameras and enclosures, and lights and enclosures, including mobile ECS and shippable ECS, portable laptop ECS, and ECS v. 10.  These products among others, marketed and sold by Carotek, embody Equaphor's Patented Technology in a manner such that the technology utilized by Carotek is substantially identical or sufficiently similar to Equaphor's Patented Technology, and/or such products otherwise are within and therefore embody Equaphor's Patented Technology; and

(b)    actively inducing and causing others, such as manufacturers and owner operators of such products:  (i) to make, cause to be made, use, sell, and offer for sale products that embody Equaphor's Patented Technology, without marking, license, permission, and/or payment, and/or (ii) to modify such products so that they embody Equaphor's Patented Technology.

38.    Accordingly, since termination of the License Agreement, Carotek has committed acts of infringement pursuant to 35 U.S.C. § 271, including without authority, making, using, offering to sell, and/or selling Equaphor's Patented Technology.  Carotek therefore willfully is infringing on Equaphor's Patented Technology.

39.    Pursuant to 35 U.S.C. § 271 Equaphor reserves all rights further to amend its Counterclaim to encompass additional acts of Patent Infringement including but not limited to discovery of unreported sales resulting from Carotek's failure to comply with the mandatory reporting requirements of  Section 4.3 of the License Agreement.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                                                    14

40.    Carotek's patent infringement proximately has caused and continues to cause Equaphor to sustain damages, and Equaphor is threatened with the injury described and inferred from the allegations herein.

### AS AND FOR A SECOND COUNTERCLAIM AGAINST CAROTEK
#### Patent Infringement (Inducement)

41.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 40 above.

42.    Carotek has installed numerous ECS Systems embodying Equaphor's Patented Technology.  Unknowingly, the end customers who have purchased the systems have become unwitting accomplices to Carotek's willful infringement as Carotek has induced these parties into believing that Equaphor's Patented Technology incorporated into the ECS marketed and sold by Carotek have been appropriately licensed, paid for and marked.

43.    Carotek has committed acts of infringement pursuant to 35 U.S.C. § 271, including without authority, actively inducing and causing others, such as manufacturers and owner operators of such products, (i) to make, cause to be made, use, sell, and offer for sale products which embody Equaphor's Patented Technology, and/or (ii) to modify such products so that they embody Equaphor's Patented Technology.

44.    Pursuant to 35 U.S.C. § 271 Equaphor reserves all rights further to amend its Counterclaim to encompass additional acts of Patent Infringement (Inducement) including but not limited to discovery of unreported sales resulting from Carotek's failure to comply with the mandatory reporting requirements of  Section 4.3 of the License Agreement.

45.    Carotek's patent infringement proximately has caused and continues to cause Equaphor to sustain damages, and Equaphor is threatened with the injury described and inferred from the allegations herein.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

<u>AS AND FOR A THIRD COUNTERCLAIM AGAINST CAROTEK</u>
Breach of License Agreement

46.     Equaphor and Jacklin incorporate herein by reference the allegations set forth in ¶¶ 1 through 31 above.

47.     To the extent that the License Agreement did not terminate on December 27, 2007, it remained in effect as of the date of the Notice of Termination.

48.     Paragraph 16.3.3 of the License Agreement states, "[Carotek] shall have the right to terminate this Agreement upon thirty (30) days prior written notice to [Licensor] to such effect in the event that: … Other material events or reasons making it impossible or unreasonable for [Carotek] to continue its performance under this Agreement."

49.     Upon information and belief, no material event or reason makes it impossible or unreasonable for Carotek to continue to perform under the License Agreement.  Specifically, among other things, but for the sham transaction through which Carotek purported to sell its ECS business to ECS, Carotek could continue to perform under the License Agreement.  In fact, upon information and belief, and as more fully alleged below, Carotek continues to engage in its ECS business through its alter ego, ECS.

50.     As a result, Carotek's November 10, 2009 letter, purporting to terminate the License Agreement, is invalid.  Therefore, to the extent that the License Agreement did not otherwise terminate on December 27, 2007, it remains in effect.

51.     Under the License Agreement, Carotek had (regardless of any termination on December 27, 2007 or December 11, 2009), and continues to have, contractual obligations to, among other things, make royalty payments and Minimum Guaranteed Annual Fees payments pursuant to Articles III and IV; maintain and make available pertinent records relating to license fee payments, royalties and the like pursuant to Article V; maintain confidentiality pursuant to

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Article VII; mark pursuant to Article XIV; upon termination immediately cease design, manufacture, sale and installation of subject products pursuant to Section 16.5; *et cetera*.

52.    Carotek materially has breached (regardless of any termination on December 27, 2007 or December 11, 2009), and continues materially to breach, the License Agreement by failing to perform as required by the License Agreement, including but not limited to failure to comply with the Articles/Sections identified in ¶ 51 above.

53.    Additionally, Carotek has exercised, and continues to exercise, complete domination over ECS such that ECS is an alter ego of Carotek.  Specifically, among other things, and as more fully stated in ¶ 29 above, there exists between Carotek and ECS such overlap in ownership; use of common office space, address and telephone numbers; lack of arms length dealings; *et cetera* that ECS transacts Carotek's business instead of its own.

54.    Carotek materially has breached (regardless of any termination on December 27, 2007 or December 11, 2009), and continues materially to breach, the License Agreement by failing to perform as required by the License Agreement regarding transactions performed by ECS.

55.    Carotek's material breaches of the License Agreement proximately have caused damages to Equaphor estimated at $1,500,000.00.  Alternatively, to the extent that Jacklin retained any right to sue for past breaches of the License Agreement, Carotek's material breaches of the License Agreement proximately have caused damages to Jacklin estimated at $1,500,000.00.

56.    Equaphor and its predecessor Licensors duly have performed all duties required of Licensor under the License Agreement.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

### AS AND FOR A FOURTH COUNTERCLAIM AGAINST ECS
#### Patent Infringement

57.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 above.

58.    Since ECS' creation, without permission, ECS has made, caused to be made, used, sold, and offered for sale products embodying Equaphor's Patented Technology.

59.    To the extent that ECS may be regarded as an entity separate and distinct from Carotek, ECS willfully has been infringing upon Equaphor's Patented Technology, with full knowledge of the ownership by others identified above, of Equaphor's Patented Technology, by engaging in conduct such as the following:

(a)    making, causing to be made, using, selling, and offering for sale, without marking, license, permission and/or payment, products such as the following:  synchronizing event capturing systems, cameras and enclosures, and lights and enclosures, including mobile ECS and shippable ECS, portable laptop ECS, and ECS v. 10.  These products among others, marketed and sold by ECS, embody Equaphor's Patented Technology in a manner such that the technology utilized by ECS is substantially identical or sufficiently similar to Equaphor's Patented Technology, and/or such products otherwise are within and therefore embody Equaphor's Patented Technology; and

(b)    actively inducing and causing others, such as manufacturers and owner operators of such products:  (i) to make, cause to be made, use, sell, and offer for sale products that embody Equaphor's Patented Technology, without marking, license, permission, and/or payment, and/or (ii) to modify such products so that they embody Equaphor's Patented Technology.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

60.    Upon information and belief, ECS has been installing ECS Systems embodying Equaphor's Patented Technology.  Unknowingly, the end customers who have purchased the systems have become unwitting accomplices to ECS' willful infringement as ECS has induced these parties into believing that Equaphor's Patented Technology incorporated into the ECS marketed and sold by ECS have been appropriately licensed, paid for and marked.

61.    Since ECS' creation, ECS has committed acts of infringement pursuant to 35 U.S.C. § 271, including, without authority, making, using, offering to sell, and/or selling Kobayashi's Patented Technology.

62.    Pursuant to 35 U.S.C. § 271 Equaphor reserves all rights further to amend its Counterclaim to encompass additional acts of Patent Infringement.

63.    ECS' patent infringement proximately has caused and continues to cause Equaphor to sustain damages, and Equaphor is threatened with the injury described and inferred from the allegations herein.

## AS AND FOR A FIFTH COUNTERCLAIM AGAINST ECS
### Patent Infringement (Inducement)

64.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 and 57 through 63 above.

65.    To the extent that ECS may be regarded as an entity separate and distinct from Carotek, ECS has committed acts of infringement pursuant to 35 U.S.C. § 271, including without authority, actively inducing and causing others, such as manufacturers and owner operators of such products, (i) to make, cause to be made, use, sell, and offer for sale products which embody Equaphor's Patented Technology, and/or (ii) to modify such products so that they embody Equaphor's Patented Technology.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

66.    Pursuant to 35 U.S.C. § 271 Equaphor reserves all rights to amend its Counterclaim to encompass additional acts of Patent Infringement (Inducement).

67.    ECS' patent infringement proximately has caused and continues to cause Equaphor to sustain damages, and Equaphor is threatened with the injury described and inferred from the allegations herein.

<u>AS AND FOR A SIXTH COUNTERCLAIM AGAINST CAROTEK AND ECS</u>
Tortious Interference with Business Relations/Prospective Advantage

68.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 above.

69.    From about 1998 until September 30, 2009, Equaphor developed, manufactured and sold event capturing products, equipment, systems and software.  Among the products it developed, manufactured and sold is a product known as "Smart Advisor."  Smart Advisor incorporated Equaphor's Patented Technology and competed with the products that Carotek sold in its ECS business.

70.    On or about July 20, 1998, Equaphor entered into a License Agreement with Champion, acquiring certain patent rights to what is now known as Equaphor's Patented Technology.  The License Agreement, among other things, obligated Equaphor to pay royalties to Champion for use of Equaphor's Patented Technology within Equaphor's Smart Advisor product.

71.    Pursuant to the License Agreement, Equaphor paid royalties to Champion as a result of its sales of Smart Advisor.

72.    Initially unbeknownst to Equaphor, Carotek was failing and refusing to pay royalties to Champion as a result of its sales of products embodying Equaphor's Patented Technology, thereby breaching its License Agreement with Champion.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

73.    As a result of Carotek's breaching of its License Agreement, Carotek gained an artificial price advantage in the marketplace for event capturing products, equipment, systems and software.  Specifically, among other things, Carotek was in a position to, and in fact did, reduce the purchase price for the sale of its products containing Equaphor's Patented Technology.

74.    Thereafter, ECS—a fraudulently created entity, created with a sham transaction— schemed with Carotek to avoid liability for, among other things, payment of royalties to Champion.  Specifically, among other things, ECS has made, caused to be made, used, sold, and offered for sale products embodying Equaphor's Patented Technology.  Because it has done so without entering into any License Agreement—and thereby has avoided paying any royalties relating to Equaphor's Patented Technology—ECS has maintained the artificial price advantage in the marketplace for event capturing products, equipment, systems and software.

75.    In this manner, Carotek and ECS wrongfully and maliciously induced customers in the marketplace for event capturing products, equipment, systems and software from entering into sales contracts with Equaphor.  Specifically, among other things, Equaphor lost orders and/or purchases for its Smart Advisor product.

76.    Carotek's and ECS' actions proximately have caused damages to Equaphor estimated at $2,000,000.00.

### AS AND FOR AN SEVENTH COUNTERCLAIM AGAINST CAROTEK AND ECS
#### Violation of the North Carolina Unfair Trade Practices Act

77.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 and 68 through 76 above.

78.    As stated more fully hereinabove, Carotek and ECS gained an artificial price advantage in the marketplace for event capturing products, equipment, systems and software.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Specifically, among other things, as a result of avoiding liability for royalty payments for the use of Equaphor's Patented Technology, Carotek and ECS were in a position to, and in fact did, reduce the purchase price for the sale of its products containing Equaphor's Patented Technology. By such actions, Carotek and ECS committed unfair and deceptive trade practices, as prohibited by the North Carolina General Statute section 75-1.1.

79.    As a result of Carotek's and ECS' unfair and deceptive trade practices, Equaphor necessarily reduced its purchase price for its Smart Advisor product in order to stay competitive in the marketplace for event capturing products, equipment, systems and software. Notwithstanding Equaphor's price reductions, Carotek and ECS were able to charge less for its products containing Equaphor's Patented Technology, thereby inducing customers in the marketplace for event capturing products, equipment, systems and software from entering into sales contracts with Equaphor. Even as to sales that Equaphor was able to capture, Equaphor lost gross margin associated with those sales, as Equaphor necessarily sold its Smart Advisor product at a reduced price than it otherwise would have charged.

80.    On or about September 30, 2009, Equaphor sold its Smart Advisor business to Cognex Corporation ("Cognex"). Had Equaphor's Smart Advisor business enjoyed better financial results than it had achieved in light of Carotek's and ECS' artificial price advantage in the marketplace for event capturing products, equipment, systems and software, Equaphor would have received a higher purchase price from Cognex for its Smart Advisor business.

81.    Carotek's and ECS' actions proximately have caused damages to Equaphor estimated at $2,000,000.00.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                                                    22

## AS AND FOR A EIGHTH COUNTERCLAIM AGAINST CAROTEK AND ECS
### Civil Conspiracy

82.    Equaphor incorporates herein by reference the allegations set forth in ¶¶ 1 through 31 and 68 through 81 above.

83.    Carotek and ECS comprised a confederation of two or more persons by agreement or understanding.    Carotek and ECS conspired and agreed, among other things, willfully, maliciously and fraudulently to divert Carotek's ECS business to ECS, thereby breaching the License Agreement, solely for the purpose of avoiding royalty payments under the License Agreement, and to gain an artificial price advantage in the marketplace for event capturing products, equipment, systems and software by avoiding payment of royalties for the use of Equaphor's Patented Technology.

84.    Carotek and ECS conducted numerous unlawful and/or tortious acts in furtherance of the conspiracy, including but not limited to breaching and/or inducing the breach of the License Agreement; fraudulently shifting sales to ECS, a sham company, in avoidance of royalty payments; and otherwise committing unfair and deceptive trade practices acts.

85.    Carotek's and ECS' actions proximately have caused damages to Equaphor estimated at $2,000,000.00.

WHEREFORE, Counter-plaintiff, Equaphor, Inc. respectfully requests that this Honorable Court grant to it the following relief:

   a.    An interim order mandating Carotek to escrow five (5%) percent of the "net sales price" (as defined in the License Agreement) of all products and systems it has at any time sold which use Equaphor's Patented Technology and for which the appropriate royalty payment was not made, including pre-judgment interest calculated from the due dates of the respective royalty payments to the present at the applicable prime interest rate(s);

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

b.    An order requiring Carotek to account for and pay to Equaphor damages for patent infringement since termination of the License Agreement, including interest on damages;

c.    Treble damages against Carotek as applicable pursuant to 35 U.S.C. § 284;

d.    An order granting to Equaphor costs and reasonable attorneys' fees to be assessed against Carotek, particularly in view of ongoing, willful infringement;

e.    An interim order mandating ECS to escrow a reasonable royalty based upon the gross margin of all products and systems it has at any time sold which use Equaphor's Patented Technology, as the products would lack value absent Equaphor's Patented Technology, including pre-judgment interest calculated from the respective sales dates to the present at the applicable prime interest rate(s);

f.    An order requiring ECS to account for and pay to Equaphor damages for patent infringement, including interest on damages;

g.    Treble damages against ECS as applicable pursuant to 35 U.S.C. § 284;

h.    An order granting to Equaphor costs and reasonable attorneys' fees to be assessed against ECS, particularly in view of ongoing, willful infringement;

i.    An order granting to Equaphor and/or Jacklin damages against Carotek and ECS, jointly and severally, in an amount to be determined at the close of discovery and currently estimated to be at least $3,500,000.00, pre-judgment interest as allowable by applicable law, post-judgment interest, and costs;

j.    Treble damages and attorneys' fees against Carotek and ECS as applicable pursuant to N.C.G.S.A. § 75.16 and § 75.16.1;

k.    An order granting to Equaphor punitive damages against Carotek and ECS, jointly and severally, in the amount of $5,000,000.00; and/or

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

l.    Such other and further relief which the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Equaphor, Inc. and Jacklin Associates, Inc. elect a trial by jury of all issues and claims in this action.

By:            /s/

           Jeffrey M. Schwaber (NY Bar #4529699)

Dated:  December 7, 2009

By:            /s/

Jeffrey M. Schwaber (NY Bar #4529699)
Attorneys for Defendants/Counter-plaintiffs
Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, Maryland  20850
Telephone:  (301) 838-3210 (Jeffrey Schwaber)
Facsimile:  (301) 354-8110 (Jeffrey Schwaber)
Email: jschwaber@steinsperling.com

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1           25

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of December, 2009, I will electronically file the foregoing with the Clerk of the Court using the ECF system, which will then send a notification of such filing (NEF) to the following:

Raymond R. Castello
Fish & Richardson P.C.
153 East 53rd Street, 52nd Floor
New York, NY 10022

Gregory A. Madera
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110

W. Thad Adams, III
Adams Intellectual Property Law, P.A.
201 South College Street
Suite 2350 Charlotte Plaza
Charlotte, NC   28244

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user(s):

John Garretson
Fish & Richardson P.C.
153 East 53rd Street, 52nd Floor
New York, NY 10022

By:  _____/s/_____
Jeffrey M. Schwaber (NY Bar #4529699)
Attorneys for Defendants/Counter-plaintiffs
Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, Maryland  20850
Telephone:  (301) 838-3210 (Jeffrey M. Schwaber)
Facsimile:  (301) 354-8110 (Jeffrey M. Schwaber)
Email: jschwaber@steinsperling.com

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

1436167_1                        26